IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| TODD MCCLAIN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. 06-278 Erie |
| | ) | |
| OFFICER THOMAS MUNN, OFFICER | ) | |
| JEFFREY WOLBERT, OFFICER | ) | |
| MICHAEL WARD, and FOSTER | ) | |
| TOWNSHIP, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

Plaintiff Todd McClain sues defendants Officer Thomas Munn, Officer Jeffrey Wolbert, Officer Michael Ward and Foster Township for alleged violations of the Pennsylvania Whistleblower Law, 43 P.S. § 1421 et seq. (Count I), defamation (Count II) (against the officers only), intentional infliction of emotional distress (Count III) (against the officers only), as well as for alleged violation of his First Amendment right to free speech as pursuant to 42 U.S.C. § 1983 et seq. (Count IV). Presently pending before the Court is defendants' Motion to Dismiss [Doc. 10] and plaintiff's response thereto. For the reasons stated herein, we will grant the motion to dismiss in part and deny it in part.

## I. Background

Plaintiff Todd McClain began his employment as a police officer with the Foster Township Police Department in October 2002. Second Amended Complaint at ¶ 2. Defendant Foster Township is a political subdivision having its principal place of business in Bradford,

1

Pennsylvania. Second Amended Complaint at ¶ 4. In the course of his employment, McClain told co-workers and members of the public that Officers Munn and Wolbert were engaged in internet gambling during work hours using department computers. He also complained to his superiors that during work-hours and for no legitimate purpose, Officer Ward repeatedly viewed pornographic materials that had been seized as evidence in a criminal pornography case. Second Amended Complaint at ¶ 7.

On or about March 10, 2006, McClain was placed on administrative leave, with pay, by Officer Wolbert, the chief of the Foster Township Police Department. According to the plaintiff, he was placed on such leave based upon the false accusation that McClain was guilty of "improper conduct." Second Amended Complaint at ¶ 10. When McClain asked for clarification, the chief referred him to Officer Munn, who stated that "the insurance company" advised the police department to place him on administrative leave. Second Amended Complaint ¶ 11. McClain alleges that he remained on administrative leave until July 12, 2006, when he received a letter signed by Officer Wolbert that stated he was suspended without pay and that Wolbert would recommend to the Foster Township supervisors that McClain's employment be terminated. Second Amended Complaint ¶ 13.

According to the plaintiff, the defendant officers thereafter published false and defamatory statements about him to the effect that he was inefficient, intemperate, disobedient and neglectful of his official duties, that he engaged in conduct unbecoming a police officer by allegedly being involved in a theft of money from Officer Wolbert's office and fraudulently reporting a theft of weapons from his personal vehicle. Second Amended Complaint at ¶ 14. Such alleged false and defamatory statements were published to McClain's co-workers and to

members of the press and public during township meetings held on August 14 and September 4, 2006. Second Amended Complaint ¶ 15. McClain was terminated on August 14, 2006. Second Amended Complaint ¶ 16.

McClain denies each of the allegedly false and defamatory accusations published by the defendant officers, and maintains that he performed his official duties as a police officer in a proper, legitimate and lawful manner. Second Amended Complaint at ¶ 17. He seeks damages for loss of income and employment benefits, future lost wages and the value of future employee benefits, as well as for loss of reputation, emotional distress and physical harm. He asks that the defendants provide a formal and public retraction of each of the false and defamatory statements, a formal and public offer of reinstatement, as well as formal and complete retraction of each of the false and defamatory statements contained in his personnel file. Second Amended Complaint at p. 8.

In their Motion to Dismiss, defendants argue that plaintiff fails to state a claim with respect three of the four Counts in the Second Amended Complaint: Pennsylvania Whistleblower Law, intentional infliction of emotional distress, and defamation (Counts I, II, and III, respectively).

## II. Standard of Review

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted". A 12(b)(6) motion requires the court to examine the sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by Bell Atlantic Corporation v. Twombly, --- U.S. ----,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Ordinarily, a court's review of a motion to dismiss is limited to the contents of the complaint, including any attached exhibits. See Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir.1992). However, evidence beyond a complaint which the court may consider in deciding a 12(b)(6) motion to dismiss includes public records (including court files, orders, records and letters of official actions or decisions of government agencies and administrative bodies), documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, nn. 1-2 (3d Cir.1995).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2). That rule requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. Twombly, --- U.S. at ----, 127 S.Ct. at 1964, 167 L.Ed.2d at 940.

Additionally, in determining the sufficiency of a complaint, the court must accept as true all well-pled factual allegations and draw all reasonable inferences therefrom in the light most favorable to the non-moving party. Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003). Nevertheless, a court need not credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-1430 (3d Cir.1997).

In considering whether the complaint survives a motion to dismiss, both the District Court and the Court of Appeals review whether it "contain[s] either direct or inferential

allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Twombly, ---U.S. at ----, 127 S.Ct. at 1969, 167 L.Ed.2d at 944 (quoting Car Carriers, Inc. v. Ford Motor Company, 745 F.2d 1101, 1106 (7th Cir.1984) (emphasis in original).

## III. Discussion

### A. Count I

The plain intent of the Whistleblower Law is to protect from retaliation employees who make good-faith efforts to alert authorities to governmental waste and wrongdoing. Caprina v. Lycoming County Housing Authority, 177 F. Supp.2d 303, 329 (M.D. Pa.2001), citing Podgurski v. Pennsylvania State University, 722 A.2d 730, 732 (Pa. Super.1998). Thus, in order for an employee to succeed on a claim under the Law, he must show not only that he filed a good faith report of wrongdoing or waste, he must also establish by concrete facts and circumstances that the report led to some retaliatory action against him. Id., citing Lutz v. Springettsbury Township, 667 A.2d 251, 253 (Pa. Cmwlth.1995) and Gray v. Hafer, 168 Pa.Cmwlth. 613, 651 A.2d 221, 225 (1994). See also, Cavicchia v. Philadelphia Housing Authority, No. 03-CV-0116, 2003 U.S. Dist. LEXIS 20311 at *46 (E.D. Pa. Nov. 7, 2003), citing Golaschevsky v. Department of Environmental Protection, 554 Pa. 157, 720 A.2d 757, 759 (1998) ("Two requirements must be met for a plaintiff to prove a prima facie case of retaliatory termination and receive protection under the Whistleblower Statute: (1) wrongdoing; and (2) a causal connection between the report of wrongdoing and dismissal.") It is clear that McClain has alleged a causal connection between his alleged report of the wrongdoing and his termination in retaliation; defendants do not argue otherwise. Our inquiry focuses instead on whether the conduct complained of constitutes waste

5

or wrongdoing under the statute, and whether plaintiff blew the whistle in a legally sufficient manner.

The Pennsylvania Whistleblower Law provides that an employer may not discharge or otherwise retaliate against an employee because the employee "makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste." 43 P.S. § 1423(a). The statute defines an "employer" as "[a] person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body." 43 P.S. § 1422. An "appropriate authority" is defined as "[a] Federal, State or local government body, agency or organization having jurisdiction over criminal law enforcement, regulatory violations, professional conduct or ethics, or waste; or a member, officer, agent, representative or supervisory employee of the body, agency or organization." 43 P.S. § 1422.

We note that plaintiff's allegations as to violations of the Pennsylvania Whistleblower Law arise from two separate categories of alleged wrongful conduct: first, defendants Munn and Wolbert's alleged internet gambling, and second, defendant Ward's viewing of pornographic materials that had been seized as evidence in a criminal pornography case.

Defendants argue that plaintiff's claim under the Pennsylvania Whistleblower Law should be dismissed for legal insufficiency because he has not alleged that he reported any "waste" or "wrongdoing" as those terms are defined by the statute, to the appropriate "employer" or "authority" as defined by that statute.

We first address the alleged internet gambling. According to the defendants, McClain does not allege that he reported the alleged internet gambling to his supervisor, a superior, or any

6

agent authorized to take action on behalf of the defendant Township. We agree. Plaintiff's Second Amended Complaint simply avers that he told "coworkers" and "members of the public" about the defendants' alleged internet gambling. Second Amended Complaint at ¶ 5. This omission alone serves as a death-knell to his Whistleblower status. Yet we also agree with the defendants when they argue that plaintiff's complaint about internet gambling was not a complaint of "waste" or "wrongdoing" as defined by the Pennsylvania Whistleblower Law. The statute defines "waste" as "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." 43 P.S. § 1422 (emphasis added). "Wrongdoing" is defined by the Whistleblower Law as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation[,] or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 P.S. § 1422. To constitute "wrongdoing" the alleged misconduct must have been in violation of some federal or state statute, regulation, or local ordinance.

As observed by the Commonwealth Court in Gray, supra,

> Within the definition of 'wrongdoing,' there is a requirement that the violation of the law or regulation be one that is designed to protect the interest of the public or employer. While the definition uses the phrase 'to protect the interest of the public,' and that could be interpreted to apply to any statute or ordinance as used in the context of retaliation taken by an employer because of an employee's work performance, that requirement means that a statute or regulation is of the type that the employer is charged to enforce for the good of the public or is one dealing with the internal administration of the governmental employer in question.

Gray, 651 A.2d at 224. See also, Caprina, 177 F. Supp.2d at 330.

Plaintiff simply alleges in the Second Amended Complaint that Officers Munn and Wolbert engaged in internet gambling during work-hours and with department computers; he does not put forth any argument in his brief in opposition to the motion to dismiss with respect to how the internet gambling would constitute "wrongdoing." Plaintiff has not answered defendants' challenge to point to any federal or state statute, regulation or local ordinance which makes internet gambling by individuals unlawful. Moreover, the Second Amended Complaint fails to specify the amount of time involved in such activities so as to constitute "waste" under the statute. The allegation that Wolbert engaged in Internet gambling during work hours and with department computers, although allegedly rendering such department computers "unavailable for legitimate police work," as stated in the Second Amended Complaint, does not rise to the level of "substantial abuse, misuse, destruction or loss" of the Township's funds or resources. At most, this constituted a *de minimis* disruption of the police department's daily activities.

We now turn to the allegations that Officer Ward viewed pornographic material seized as evidence in a criminal pornography case during work hours. We find that plaintiff has met a threshold requirement for stating a claim under the Whistleblower Law with respect to this alleged activity. First, we agree with plaintiff's argument that this conduct could constitute "wrongdoing" insofar as it violates the International Association of Chiefs of Police Model Policy on Standards of conduct at § VI(A)(8)(c) (stating that "[o]fficers shall not . . . . convert to their own use . . . any property held or released as evidence.) Second, plaintiff has alleged that he reported this conduct to his superiors as is required by the Whistleblower law. Second Amended

8

Complaint at ¶ 7. We therefore find that plaintiff may go forward that portion of Count I with respect to the reporting of Officer Ward's viewing of pornographic material.

### B. Count II

Second, defendants argue that McClain's claim for intentional infliction of emotional distress should be dismissed because he has not alleged conduct that is of an extreme and outrageous character as is necessary for such a cause of action. To sustain a claim for intentional infliction of emotional distress, a plaintiff must show extreme and outrageous conduct which is deliberate or reckless and which causes severe emotional distress. Bedford v. Southeastern Pa. Trans. Auth., 867 F. Supp 288, 297 (E.D. Pa.1994); Kazatsky v. King David Memorial Park, Inc., 515 Pa. 183 (Pa. 1987). The conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Bedford, 867 F. Supp. at 297; Kazatsky, 527 A.2d at 991.

Wrongful and even malicious interference with employment is not sufficiently outrageous, atrocious or intolerable to sustain an intentional infliction of distress claim. See, e.g., Andrews v. City of Philadelphia, 895 F.2d 1469, 1487 (sexual harassment of employee insufficient); Cox v. Keystone Carbon, 861 F.2d 390, 390 (3d Cir. 1988) (ill-motivated or callous termination of employment insufficient); Gonzales v. CNA Ins. Co., 717 F. Supp. 1087, 1088 (E.D. Pa.1989) (false accusations of sexual harassment of fellow employees accompanying termination insufficient); Macheperla v. Willard Co., 606 F. Supp. 874, 880 (E.D. Pa.1985) (intentional creation of intolerable working conditions to force resignation insufficient); Cautilli v. GHF Corp., 531 F. Supp. 71, 74 (E.D. Pa.1982)(intentionally deceiving plaintiff to deprive

9

him of employment opportunity insufficient); Motheral v. Burkhart, 583 A.2d 1180, 1190 (Pa. Super.1990) (false accusation of child molestation insufficient).

In response, plaintiff argues that defendants misunderstand plaintiff's claim in that the claim rests upon the contention that he was terminated after being falsely accused of crimes by the same officers he complained were guilty of wrongdoing and waste, citing Gilbert v. Feld, 788 F. Supp. 854, 862 (E.D. Pa. 1992). We note, however, that to state a claim for intentional infliction of emotional distress, "the conduct must be so extreme that it offends the very moral values of our society." Williams v. Fedor, 69 F. Supp.2d 649, 668 (M.D. Pa.1999), aff'd., 211 F.3d 1263 (3d Cir.2000). "[O]nly the most egregious conduct" will sustain such a claim. Hoy v. Angelone, 720 A.2d 745, 754 (Pa.1998). "Overreaching, but not abusive, tactics used in the course of everyday living will not support a claim for intentional infliction of emotional distress." Bradshaw v. General Motors Corp., 805 F.2d. 110, 114 (3d Cir.1986).

Here, case law indicates that the defendants' complained-of acts are not so outrageous in character, nor so extreme in degree, as to support a claim for intentional infliction of emotional distress. For instance, in Atkinson v. City of Philadelphia, 2000 WL 793193, * 1, *6 (E.D. Pa., June 20, 2000), aff'd., 281 F.3d 218 (3d Cir.2001) [table], claims that a police detective submitted a false affidavit of probable cause to obtain an arrest warrant for a plaintiff, after which police forced their way into the plaintiff's home while searching to arrest him, and in the process, terrified his children did not rise to the level of atrocity needed to sustain a claim for intentional infliction of emotional distress. Likewise, in Gilbert v. Feld , 842 F. Supp. 803, 821 (E.D. Pa.1993), the case cited by plaintiff herein in opposition to the motion to dismiss, claims that a county detective instituted the plaintiff's arrest without probable cause, arrested him in front of

10

his grandmother, placed him in handcuffs and made him walk five or six blocks, transferred him to another jail without instructions to do so, detained him for several hours before his arraignment, persuaded him to waive his arraignment in Philadelphia until he was transferred to Montgomery County, re-arrested him without probable cause, and signed an affidavit of probable cause despite knowing it was false were held not to be so outrageous as to constitute a claim for intentional infliction of emotional distress. In <u>Sieger v. Township of Tinicum</u>, 1991 WL 197315, *5 (E.D. Pa., Sept. 30, 1991), claims that a township executive official knowingly issued a series of citations without probable cause and testified falsely at a hearing on the citations were deemed not to rise to the requisite level of outrageousness.

Based on our review of the plaintiffs' claims in Count II, we find the defendants' complained-of acts are not so outrageous or egregious in nature as to support a claim for intentional infliction of emotional distress. An appropriate order will be entered dismissing Count II of the Second Amended Complaint in its entirety.

### C. Count III

Third and finally, defendants argue that McClain's claim for defamation should be dismissed because he has failed to identify any specific defamatory statement attributable to the defendants and has failed to identify any individual to whom the alleged defamatory statement(s) was made. In a defamation action, the plaintiff has the burden of proving (1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff, (4) an understanding by the recipient of its defamatory meaning, (5) an understanding by the recipient of it as intended to be applied to the plaintiff, (6) harm resulting to the plaintiff from its publication, and (7) abuse of a conditionally privileged occasion. 42 Pa.C.S.A. §

11

8343(a). Additionally, to recover damages, a plaintiff must prove that the statement results from fault, amounting to at least negligence, on the part of the defendant. U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 923 (3d Cir. 1990).

Defendants argue that plaintiff has failed to identify any specific statement made by any of the defendants, the recipient of such statement, or the speaker of such statement and thus, should either be dismissed or should result in us granting their request for a more definite statement pursuant to Fed. R. Civ. P. 12(e). Murray v. Gencorp, Inc., 979 F Supp. 1045 (E.D. Pa. 1997).

We disagree. Plaintiff has specified in his Second Amended Complaint the defamatory statements about which he complains ("that Mr. McClain engaged in conduct unbecoming a police officer by allegedly being involved in a theft of money from Officer Wolbert's office and fraudulently reporting a theft of weapons from his personal vehicle"); the speakers of such defamatory statements ("Officers Munn, Wolbert and Ward"); and the recipients of such statements ('Mr. McClain's co-workers and . . . members of the press and public"). We will therefore deny defendants' request that the defamation allegation be dismissed and see no reason to require plaintiff to provide a more definite statement.

## IV. Conclusion

Accordingly, for the reasons stated herein, we will enter an order granting in part and denying in part defendants' Motion to Dismiss.

Date: April 8, 2008

Hon. Maurice B. Cohill, Jr.
Senior United States District Court Judge